IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 20, 2019 Session

## STATE OF TENNESSEE v. JAWARA JONES

**Appeal from the Circuit Court for Maury County**
**No. 2016-CR-24742      David L. Allen, Judge**

_____

### No. M2017-01666-CCA-R3-CD

_____

A jury convicted the Appellant, Jawara Jones, of possession of cocaine, possession of marijuana, driving on a revoked license, and tampering with evidence. He received a total effective sentence of fifteen years, eleven months, and twenty-nine days. On appeal, he contends (1) that the trial court erred by allowing the State to introduce proof of a prior unindicted sale of cocaine, (2) that the trial court erred by allowing a police officer to testify as an expert witness, and (3) that the trial court erred in sentencing the Appellant. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Joseph D. Baugh, Franklin, Tennessee (on appeal), and Kevin Latta, Columbia, Tennessee (at trial), for the Appellant, Jawara Jones.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; Brent A. Cooper, District Attorney General; and Patrick Powell, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### I. Factual Background

The Appellant was charged with possession of .5 grams or more of cocaine with intent to sell in a school zone, possession of marijuana, tampering with evidence, and

driving on a revoked license. The charges stemmed from a traffic stop on December 16, 2015.

At trial, Officer Neylan Barber testified that he worked with the Colombia Police Department's special response team and that the unit's goal was to suppress all crime, primarily drugs. Officer Barber said that he had extensive training in drug interdiction and investigation.

Officer Barber said that on December 16, 2015, he was near the intersection of East 11th Street and Bridge Street when he saw a Nissan Altima with an expired license plate. He confirmed with the police dispatcher that the vehicle's registration was invalid. Officer Barber activated his patrol vehicle's blue lights to initiate a traffic stop, and the Altima stopped around the "1100 block of Woodland." Officer Barber approached the vehicle, and the Appellant, who was the driver, rolled down the driver's side window two or three inches. Officer Barber could not see inside the vehicle and asked the Appellant to roll down the window further. After the Appellant complied, Officer Barber immediately smelled the odor of marijuana coming from inside the vehicle.

Officer Barber asked the Appellant for his driver's license, the vehicle's registration, and proof of insurance. The Appellant responded that he did not have any identification, including a driver's license. Officer Barber later learned that the Appellant's driver's license had been revoked. The Appellant began looking through the paperwork in the glove compartment in an attempt to find the registration papers and advised Officer Barber that the vehicle did not belong to him.

After the Appellant exited the Altima at Officer Barber's request, Officer Barber saw the Appellant "tense up" and "breath[e] heav[ily]." Officer Barber noticed the Appellant "was actively chewing on something." Officer Barber asked the Appellant to open his mouth, and when he complied, Officer Barber saw "clumps" of marijuana stuck between the Appellant's teeth. The Appellant also had an odor of unburned marijuana on his breath. The officer questioned the Appellant about the smell of marijuana, and the Appellant explained that he had been smoking marijuana. Officer Barber did not believe the Appellant could have gotten marijuana stuck between his teeth by smoking it. Officer Barber said that he had the experience and training to differentiate the smell of unburned marijuana from the smell of burned marijuana. Officer Barber surmised that the Appellant was eating the marijuana because he was "trying to destroy it or conceal it." Afraid the Appellant might further destroy the marijuana, Officer Barber handcuffed him and advised him of his Miranda[1] rights.

---

[1]See Miranda v. Arizona, 384 U.S. 436 (1966).

Officer Barber said that he searched the Altima at the scene. During the search, he found a bag of marijuana between the driver's seat and door. He also found a bag containing a white rocky substance he thought was crack cocaine between the middle console and the passenger's seat. While searching the Appellant, Officer Barber found several bills that were folded into squares, and one of the squares contained marijuana.[2] The Appellant admitted the drugs belonged to him. Testing by the Tennessee Bureau of Investigation's (TBI) crime laboratory revealed the substances were .4 grams of crack cocaine and .39 grams of marijuana.

Officer Barber said that typically a drug user possessed no more than "a point," or .1 gram, of a drug but that the amount the Appellant possessed was four times greater than that amount. Officer Barber said that crack cocaine usually came in "rock form" and that the Appellant's crack cocaine was in small pieces, which indicated that it had been broken off of a larger piece of crack cocaine. Typically, crack cocaine that was intended for sale was packaged in a corner that had been cut from a sandwich bag, but the Appellant's crack cocaine was in an intact sandwich bag.

Officer Barber said that he found an Apple iPhone 6 cellular telephone in the Altima. The Appellant said the cellular telephone was his, and Officer Barber allowed him to make a telephone call. Sometime thereafter, Officer Barber obtained a search warrant for the telephone. He found numerous messages that had been received and sent over the course of several days that indicated drug transactions. Officer Barber explained that one incoming message referred to the Appellant's owing someone "a dime," which was slang for ten dollars worth of marijuana. Other incoming messages requested "chronic," "turnips," or "poke salad," which were slang terms for marijuana. The Appellant told one of the people requesting marijuana to call him. The Appellant also received an inquiry about "a 40," which Officer Barber said was a slang term for .4 grams or approximately forty dollars worth of crack cocaine. Another message requested the price of an "eight ball," which was 3.5 grams of crack cocaine. During an exchange of messages, someone asked if the Appellant had "some to sell," and the Appellant responded that the price would be "$260."

Officer Barber testified that he measured the distance from Horace Porter School to the location where the Appellant's car was stopped. He determined that it was three hundred and sixty-five feet to the school's property line and five hundred feet to the front door.

---

[2] The State and defense counsel stipulated to the chain of custody and identity of the drugs.

On cross-examination, Officer Barber acknowledged that he had never testified as an expert witness. Officer Barber conceded that he had arrested drug dealers and found large amounts of drugs, substantial sums of money, and weapons and that none of those items were found in the instant case. Officer Barber noted that the Appellant had three twenty-dollar bills, one ten-dollar bill, three five-dollar bills, and six one-dollar bills, but Officer Barber did not consider the amount of money to be substantial. Officer Barber explained that drug dealers commonly traveled with only the amount of drug they planned to sell because they were aware the other items were additional indicators of intent to sell.

Officer Barber noted that the marijuana he found on the Appellant was wrapped inside a one-dollar bill. He said that marijuana was not sold in one-dollar increments but that he had "seen drugs sold in dollar[] bills before."

Officer Barber said that he did not find any burned marijuana in the Altima, but he smelled unburned marijuana when the Appellant rolled down the window. He thought the smell came from the marijuana in the Appellant's mouth or from the bag of marijuana that was found inside the vehicle. Officer Barber thought that someone who sold drugs on a regular basis would be able to estimate the weight of a drug by sight.

On redirect examination, Officer Barber surmised that the Appellant was not charged for an October cocaine sale because the police may have been using the confidential informant to "get a bigger fish" or because the prosecuting officer had left the department.

Officer Jonathan Hardison testified that in October 2015, he was working vice and narcotics in the Columbia Police Department. On October 22, he assisted in a controlled purchase from the Appellant. The police searched the confidential informant's person and vehicle prior to the purchase. After the search, the confidential informant was supplied with cash, and the police followed him to the sale. The confidential informant purchased a substance that field-tested positive for crack cocaine.

On cross-examination, Officer Hardison acknowledged he was assisting Officer Hunter Kready with the October sale. He further acknowledged that he did not know anything about the confidential informant's trustworthiness, that he did not see the transaction occur, and that he did not see the Appellant that day.

On redirect examination, Officer Hardison said that Officer Kready had taken a job in South Carolina and no longer worked for the Columbia Police Department.

- 4 -

The jury acquitted the Appellant of the charged offense of possession of .5 grams or more of cocaine with the intent to sell in a drug-free school zone but found him guilty of the lesser-included offense of simple possession of cocaine. The jury found the Appellant guilty as charged on the remaining counts.

On appeal, the Appellant contends that the trial court erred by allowing the State to introduce proof of the October sale of cocaine, arguing that it violated Tennessee Rule of Evidence 404(b) and his right to confront the witnesses against him. The Appellant further contends that the trial court erred by allowing Officer Barber to testify as an expert witness. Finally, the Appellant challenges the length of the sentences imposed by the trial court and the imposition of consecutive sentencing.

## II. Analysis

### A. Plain Error

The Appellant acknowledges that the evidentiary issues he raises on appeal were not objected to at trial and were not raised in his motion for new trial and that he is entitled to appellate relief only in the event of plain error.[3] Tennessee Rule of Evidence 103(a) provides that

> [e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and (1) . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context[.]

Our supreme court recently explained that "[t]he clear implication of Rule 103(d) is that evidentiary objections not brought to the trial court's attention at the appropriate time will not be considered under plenary review." State v. Alexander R. Vance, No. M2017-01037-SC-R11-CD, 2020 WL 896735, at *17 (Tenn. at Nashville, Feb. 25, 2020). Nevertheless, the failure to raise a contemporaneous objection does not preclude this court from addressing "'plain errors affecting substantial rights although they were not brought to the attention of the court.'" Id. (quoting Tenn. R. Evid. 103(d)).

Generally, failure to raise an issue, other than sufficiency of the evidence or sentencing, in a motion for a new trial constitutes waiver of that issue for purposes of

---

[3] We further note that the Appellant's notice of appeal was untimely by one day. However, the State did not oppose waiver of the timely filing.

appellate review. See Tenn. R. App. P. 3(e). However, Tennessee Rule of Appellate Procedure 36(b) provides that "[w]hen necessary to do substantial justice, [this] court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." See also Tenn. R. Evid. 103(d); State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000); State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). We may only consider an issue as plain error when all five of the following factors are met:

> a) the record must clearly establish what occurred in the trial court; b) a clear and unequivocal rule of law must have been breached; c) a substantial right of the accused must have been adversely affected; d) the accused did not waive the issue for tactical reasons; and e) consideration of the error is "necessary to do substantial justice."

Adkisson, 899 S.W.2d at 641-42 (footnotes omitted); see also Smith, 24 S.W.3d at 283 (adopting the Adkisson test for determining plain error). Furthermore, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642 (internal quotation marks omitted) (quoting United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988)).

## 1. Rule 404(b)

On appeal, the Appellant contends that the trial court "erred in allowing the State to introduce propensity evidence of an unindicted sale of a quantity of controlled substance by the Appellant within a year before this alleged offense." The Appellant contends that the evidence "contained hearsay," "violated the Appellant's right to confront any witnesses against him," and violated Tennessee Rule of Evidence 404(b). The Appellant acknowledges that he was not convicted of possession of cocaine with the intent to sell, but he argues that the admission of "the propensity evidence virtually assured a conviction." The State responds that the trial court did not err by admitting the evidence under Rule 404(b). We agree with the State.

The record reveals that immediately prior to trial, defense counsel filed a motion in limine to prevent the State from introducing proof of the Appellant's involvement in the October 22, 2015 drug sale. Defense counsel conceded that "a considerable amount of case law" supported admitting the prior sale because it was relevant to whether the Appellant possessed the cocaine in the instant case with the intent to sell. Nevertheless, defense counsel argued that Tennessee Rule of Evidence 404(b) was a rule of exclusion. Defense counsel noted that the Appellant was never charged for the October 22, 2015 drug sale. Defense counsel maintained that the facts of the instant case, without the

introduction of the prior sale, were insufficient to establish that the Appellant had the intent to sell the drugs. He notes that in this case the Appellant did not have a large amount of drugs or money and did not have bags or scales; accordingly, the State had to rely on propensity evidence to establish his intent to sell. The State responded that case law supported admitting evidence of the prior sale to establish the Appellant's intent to sell in the instant case.

In a jury-out hearing, Officer Jonathan Hardison testified that on October 22, 2015, he was working for the Colombia Police Department, and he assisted Officers Kready and Segroves with a controlled purchase of cocaine from the Appellant. Prior to the purchase, Officer Hardison searched the confidential informant and his car to ensure he had no money or drugs. The confidential informant then called the Appellant's telephone number, met the Appellant, and purchased the cocaine with money provided by the officers.

Officer Hardison said that he accompanied the other officers as backup. He could not recall if the purchase was recorded. After the purchase, the confidential informant returned to the predetermined location and gave the substance he had purchased to Officer Kready. Officer Hardison field tested the substance, which was .8 grams of cocaine. The confidential informant was searched again, and no additional drugs or money were found.

On cross-examination, Officer Hardison said that he did not know the confidential informant's identity but that he knew the confidential informant was not an undercover law enforcement officer. Officer Hardison monitored the transaction by listening to live audio, but no video was taken for review. Officer Hardison did not know why the Appellant was not charged for the October sale.

The trial court examined the issue under Tennessee Rule of Evidence 404(b) and found that a material issue existed other than conduct conforming with a character trait, namely the Appellant's possession of the cocaine with the intent to sell. The trial court found that the State had established clear and convincing evidence of the prior sale, noting that the confidential informant was monitored to and from the sale and that the confidential informant called the Appellant to arrange the sale. Finally, the trial court held that the probative value of the evidence was not outweighed by the danger of unfair prejudice. Accordingly, the trial court ruled that the evidence was admissible.

After Officer Hardison testified about the prior sale, the trial court instructed the jury:

[Y]ou are to consider the evidence of a drug sale on October 22, 1015 only on the issue or for the purpose of whether the [Appellant] intended to sell crack cocaine in this case, or cocaine in this case. You may not use that proof as evidence of the propensity of the [Appellant] to sell cocaine on December 16, 2015.

Tennessee Rule of Evidence 404 provides:

(b) Other Crimes, Wrongs, or Acts. - Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

See also State v. Thacker, 164 S.W.3d 208, 240 (Tenn. 2005), State v. Parton, 694 S.W.2d 299, 302 (Tenn. 1985). A trial court's decision regarding the admission of Rule 404(b) evidence will be reviewed under an abuse of discretion standard; however, "the decision of the trial court should be afforded no deference unless there has been substantial compliance with the procedural requirements of the Rule." State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). Generally, "[o]nly in an exceptional case will another crime, wrong, or bad act be relevant to an issue other than the accused's character. Such exceptional cases include identity, intent, motive, opportunity, or rebuttal of mistake or accident." State v. Luellen, 867 S.W.2d 736, 740 (Tenn. Crim. App. 1992).

In the instant case, the trial court complied with the procedure outlined in Rule

404(b). The trial court held a hearing outside the jury's presence and found that a material issue existed other than conduct conforming with a character trait, namely the Appellant's intent to possess the crack cocaine with the intent to sell. The trial court further found that the State had established the sale by clear and convincing evidence. Finally, the trial court found that the probative value of the prior sale was not outweighed by the danger of unfair prejudice. "This court has previously noted that evidence of prior drug sales is probative of the defendant's knowledge and intent to possess drugs for resale." State v. Richard Wayne Hampton, No. W2006-02189-CCA-R3-CD, 2008 WL 169645, at *4 (Tenn. Crim. App. at Jackson, Jan. 18, 2008); see State v. Allen Jean Stephens, No. M2004-00531-CCA-R3-CD, 2005 WL 1541850, at *4 (Tenn. Crim. App. at Jackson, June 23, 2005). "Furthermore, . . . the danger of unfair prejudice was diminished by the court's [limiting] instruction to the jury." Richard Wayne Hampton, No. W2006-02189-CCA-R3CD, 2008 WL 169645, at *4. We conclude the trial court did not err in admitting the prior sale.

## 2. Expert Testimony

The Appellant contends that the trial court erred by allowing Officer Barber to testify as an expert on the illegal drug business and also the "facts that the State must prove to secure a guilty verdict." The Appellant contends that "the experts are no longer aiding the jury in its fact-finding; they are instructing the jury on the existence of the facts needed to satisfy the elements of the charged offense."

The Appellant acknowledges that he waived this issue and that this court may only grant relief in the event of plain error. The State responds that the trial court did not err by allowing Officer Barber to testify as an expert. We agree with the State.

Immediately prior to trial, defense objected to Officer Barber's testifying as an expert witness pursuant to Tennessee Rules of Evidence 702. Defense counsel contended that allowing the State's prosecuting witness to testify as an expert in drug investigations was inappropriate and fundamentally unfair. Defense counsel further contended that allowing Officer Barber to testify as both an expert witness and also a fact witness was essentially allowing him to testify regarding the ultimate issue of the Appellant's guilt.

The State responded that whether Officer Barber was the investigating officer was irrelevant. The State contended that based on Officer Barber's experience and training, he qualified as an expert in drug investigations and that he "could give his opinion about things as to intent, package, that kind of information."

During a jury-out hearing, Officer Barber testified that he had been a police officer for six years. At the time of trial, he had been an investigator for the vice narcotics

division of the Columbia Police Department for three or four months. Prior to that time, he was a member of a special response team and a crime suppression unit that was "heavily . . . involved" with drug investigation and interdiction.

Officer Barber said that he had specialized training in narcotics and narcotics investigation. Notably, he had attended two sixteen-hour courses: Introduction to Drug Patrol Investigation and Introduction to Clandestine Laboratory Investigations. He also attended courses related to "Highway Rural Drug Investigation and Patrol Criminal Interdiction." Additionally, he attended Operation Pipeline, a twenty-four-hour course on drug interdiction and "police and dog encounter[s]" taught by the Drug Enforcement Agency. He also attended Interdiction Plus training taught by the Tennessee Highway Patrol, which was a forty-hour course. Further, he attended the Twenty-Fifth Annual Motor Vehicle Criminal Interdiction training and Basic Narcotics Investigation, each of which was a forty-hour course, and the Twenty-sixth Annual Motor Vehicle Criminal Interdiction training, which was a thirty-two-hour course. He also attended several basic level training and general in-service training courses. Officer Barber said, "I have made roughly 400 cases myself just on drugs alone. That's not counting other crimes and also where I assisted in interviews of other people's cases." Finally, Officer Barber said that he had testified as a prosecuting officer in at least 343 drug related cases. Officer Barber said that he had worked with trained narcotics officers and that he had interviewed drug users and sellers.

On cross-examination, Officer Barber said that he was required to perform forty hours of continuing education every year. He thought the last course he attended that specifically related to drug investigation was at the end of 2016.

On redirect examination, Officer Barber said that a person who was not familiar with the drug community probably would not know what crack cocaine looked like, the amount in which the drug was commonly sold, the usual price of the drug, or how the drug typically was packaged.

The trial court found that the jury would be aided by expert testimony. The trial court further found that Officer Barber's knowledge, skill, experience, training, and education qualified him as an expert. The court cautioned the State, "I do not anticipate you will ask the question, do you believe the [Appellant] – is it your opinion the [Appellant] is guilty, but I think as to packaging and such, that his testimony would be permissible."

Generally, expert testimony must be both relevant and reliable before it is admissible. McDaniel v. CSX Transp., Inc., 955 S.W.2d 257, 265 (Tenn. 1997). The trial court has broad discretion in determining the qualifications, admissibility, relevancy,

and competency of expert testimony. See State v. Stevens, 78 S.W.3d 817, 832 (Tenn. 2002). This court will not overturn the trial court's ruling on the admissibility of expert testimony absent an abuse of that discretion. See State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993).

The admission of expert testimony is governed by Tennessee Rules of Evidence 702. Rule 702 provides, "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Evidence constitutes "'scientific, technical, or other specialized knowledge,' if it concerns a matter that 'the average juror would not know, as a matter of course.'" State v. Murphy, 953 S.W.2d 200, 203 (Tenn. 1997) (quoting State v. Bolin, 922 S.W.2d 870, 874 (Tenn. 1996)).

Our supreme court has observed that an expert "may acquire the necessary expertise through formal education or life experiences." State v. Reid, 91 S.W.3d 247, 302 (Tenn. 2002). "However, the witness must have such superior skill, experience, training, education, or knowledge within the particular area that his or her degree of expertise is beyond the scope of common knowledge and experience of the average person." Id.

This court has held that "[w]hen the State establishes that an officer possesses the necessary training, experience, and familiarity with the illicit drug trade, the officer may testify about matters relating to the business of buying, selling, trading, and use of illegal drugs pursuant to Rule 702 of the Tennessee Rules of Evidence." State v. Elliot, 366 S.W.3d 139, 147 (Tenn. Crim. App. 2010). Officer Barber testified about his extensive training and experience in drug investigation and interdiction. The trial court found that Officer Barber had sufficient qualifications to testify as an expert and that the jury would be aided by his testimony. See State v. Alfred Calvin Whitehead, No. M2014-00748-CCA-R3-CD, 2015 WL 4148363, at *9 (Tenn. Crim. App. at Nashville, July 9, 2015); State v. Dennis Marshall, No. W2011-00742-CCA-R3-CD, 2012 WL 4459810, at *12 (Tenn. Crim. App. at Jackson, Sept. 27, 2012).

Regarding the Appellant's argument that Officer Barber's testimony concerned the ultimate issue of the case, we note that this court has held that such "testimony was admissible because it aided the jury in understanding facts about drug sales which they were unlikely to have known," even when it concerned the officer's belief regarding whether the defendant possessed the drugs for sale or delivery. See State v. Brandon Jones, No. W2013-00333-CCA-R3-CD, 2014 WL 6680680, at *9 (Tenn. Crim. App. at Jackson, Nov. 26, 2014). Notably, Tennessee Rule of Evidence 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not

objectionable because it embraces an ultimate issue to be decided by the trier of fact." See id. The Appellant is not entitled to plain error relief on this issue.

### 3. Confrontation

Next, the Appellant maintains that his right to confront the witnesses against him was violated when the trial court allowed the State to introduce evidence of the October sale of cocaine. The Appellant specifically objects to Officer Barber's testimony about (1) "[d]rug jargon" such as the slang terms for marijuana and crack cocaine, (2) how marijuana is packaged for sale, (3) that a person's intent to sell a controlled substance can be determined from the drug's weight and packaging, (4) the authentication of photographs on the Appellant's cellular telephone and their bearing on the Appellant's intent to sell drugs, (5) Officer Barber's ability to make a visual identification of crack cocaine, (6) the price of crack cocaine, (7) Officer Barber's opinion that the sole reason for the Appellant to eat marijuana was to destroy or conceal it, (8) the meaning of the text messages on the Appellant's cellular telephone and their bearing on his intent to sell drugs, and (9) Officer Barber's ability to differentiate between the smell of burned and unburned marijuana. The Appellant asserts that Officer Barber could have obtained the contested information only from a third party whom the Appellant was unable to cross-examine. The Appellant did not raise the confrontation issue at trial. The State responds that Officer Barber's testimony was based on knowledge he obtained from his police training, personal observations, and professional experience in drug investigations; therefore, the trial court did not err by allowing Officer Barber to testify. We agree with the State.

Although the Appellant contends that Officer Barber's testimony was based upon testimonial hearsay in violation of Crawford v. Washington, 541 U.S. 36 (2004), Officer Barber testified that he obtained the information by his training and experience; he did not reiterate the statements of another person or persons. Nothing in Officer Barber's testimony reflects that information came from testimonial statements, which alleviates any Crawford concerns. Officer Barber's knowledge of drug pricing and packaging as well as the behavior of drug sellers and users was admissible as relevant expert testimony. See United States v. Akins, 746 F.3d 590, 599-600 (5th Cir. 2014); United States v. Johnson, 587 F.3d 625, 635 (4th Cir. 2009). Accordingly, we conclude that the Appellant is not entitled to plain error relief on this issue.

### B. Sentencing

The Appellant challenges the sentences imposed by the trial court. The Appellant contends that the length of the sentences was excessive, thereby violating "the Eighth Amendment's ban on cruel and unusual punishments, and that the sentences were not proportional to the offenses committed. At the sentencing hearing, the State submitted the Appellant's presentence report as an exhibit. The State maintained, and defense counsel stipulated, that the Appellant was a Range III offender.

The Appellant testified that he had prior felony offenses, several of which were "many, many years old." The Appellant said that he had three children who were less than ten years old. Prior to trial, the Appellant performed odd jobs such as cutting grass. He also received social security disability benefits. He said that during his incarceration, his children would have to rely solely on their mother for financial support.

The Appellant acknowledged that he had a long-term problem with drugs. He maintained that if he were granted an alternative sentence, he would continue to receive his social security check and that he had been offered a job "[d]oing concrete" and that he had another potential job "cutting grass and stuff." He planned to live with his aunt if he were granted release. The Appellant said that he had learned that he needed to stay away from drugs, get a job, stay focused, and take care of his children. The Appellant promised the court that he would not reoffend.

On cross-examination, the Appellant said that he had not used drugs since his arrest. He said that when the officer stopped him, he told the officer that he had "smoked a blunt." He said that the marijuana in his teeth was from smoking marijuana, not from chewing raw marijuana. The Appellant said that the only marijuana found was inside the one-dollar bill in his pocket. He denied that the officer found marijuana inside the vehicle. He conceded that he lied when he told the preparer of the presentence report that he had last used marijuana in 1991. The Appellant acknowledged that he had used crack cocaine a couple of months prior to his arrest. He further acknowledged that he had sold crack cocaine. The Appellant said that he had never sold marijuana.

The Appellant said he had been on probation a "couple of times" and that he could not remember how often his probation had been revoked. He denied selling crack cocaine in October 2015. The Appellant acknowledged that he had not had a valid driver's license for many years but said that he continued to drive because he "had to . . . get to where [he] was going." The Appellant denied that anyone had called him and asked for an "eight ball." The Appellant acknowledged that he had photographs of crack cocaine and marijuana on his cellular telephone but maintained the photographs came from Facebook.

- 13 -

The trial court applied enhancement factor (1), that the Appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and enhancement factor (8), that before trial or sentencing, the Appellant failed to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(1), (8). The trial court specifically noted that the Appellant's probationary sentences had been revoked on at least ten prior occasions. The trial court found no mitigating factors. Tenn. Code Ann. § 40-35-113. Regarding consecutive sentencing, the trial court found that the Appellant was a professional criminal and that he had an extensive record of criminal activity. Tenn. Code Ann. § 40-35-115(b)(1), (2). Although the trial court did not find the Appellant to be a dangerous offender, the trial court nevertheless found that consecutive sentencing was reasonably related to the severity of the offenses committed and that an extended sentence was necessary to protect society against further criminal conduct by the Appellant. Tenn. Code Ann. § 40-35-115(b)(4); State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995).

In considering whether to grant alternative sentencing, the trial court noted that the Appellant had high blood pressure and bipolar disorder and that he was illiterate. The court stated that a significant portion of the Appellant's testimony was not truthful, that his potential for rehabilitation was poor, and that he likely would reoffend. The court did not think the Appellant could abide by the terms of probation, noting that measures less restrictive than confinement had been frequently or recently applied unsuccessfully to the Appellant. Tenn. Code Ann. § 40-35-103(1)(C).

The trial court sentenced the Appellant to concurrent sentences of eleven months and twenty-nine days for the possession of cocaine conviction and for the possession of marijuana conviction, Class A misdemeanors; to six months for the driving on a revoked license conviction, a Class B misdemeanor; and to fifteen years for the tampering with evidence conviction, a Class C felony. The trial court ordered that the misdemeanor sentences be served concurrently with each other but consecutively to the felony conviction for a total effective sentence of fifteen years, eleven months, and twenty-nine days.

Initially, we note that the Appellant argues that this court should conduct its sentencing review de novo. However, our supreme court has held that on appeal, the length, range, or manner of service of a sentence imposed by the trial court are to be reviewed under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013) (applying the standard to consecutive sentencing); State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In conducting its review, the trial court considers the following factors: (1) the evidence,

if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the Appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the Appellant to demonstrate the impropriety of his sentence(s). See Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343 (quoting Tenn. Code Ann. § 40-35-210(d)). Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

The Appellant challenges the length of his sentence for the tampering with evidence conviction, contending that his sentence was excessive and disproportionate because the trial court failed to consider the "prevalence" of that type of offense in the

jurisdiction when it imposed the maximum sentence. Both the United States Constitution and the Tennessee Constitution prohibit the imposition of cruel and unusual punishment. West v. Schofield, 460 S.W.3d 113, 117 (Tenn. 2015). In State v. Harris, 844 S.W.2d 601, 602 (Tenn. 1992), our supreme court determined that the Tennessee Constitution provides for proportionality review of non-capital sentences. See State v. Smith, 48 S.W.3d 159, 170-71 (Tenn. Crim. App. 2000). When conducting such a review, "the sentence imposed is initially compared with the crime committed. Unless this threshold comparison leads to an inference of gross disproportionality, the inquiry ends—the sentence is constitutional." Harris, 844 S.W.2d at 603 (citing Harmelin v. Michigan, 501 U.S. 957, 997-1009 (1991) (Kennedy, J., concurring in part)). This court has explained that in determining whether a sentence is grossly disproportional, a court should examine:

> (1) the nature of the crime, including whether society views the crime as serious or relatively minor and whether the crime is violent or non-violent; (2) the circumstances of the crime, including the culpability of the offender, as reflected by his intent and motive, and the magnitude of the crime; and (3) the existence and nature of any prior felonies if used to enhance the defendant's penalty.

Smith, 48 S.W.3d at 171. Generally, if the punishment imposed is within the statutory range and under well-established principles of state law, it will not be considered excessive. State v. Flynn, 675 S.W.2d 494, 499 (Tenn. Crim. App. 1984).

The record establishes that the Appellant's tampering with the evidence conviction was a Class C felony. The Appellant was sentenced as a Range III, persistent offender. Accordingly, he was subject to a sentence range of ten to fifteen years; and he was eligible for release after serving forty-five percent of his sentence. Tenn. Code Ann. §§ 39-16-503(b); 40-35-112(c)(3); 40-35-107.

The Appellant had an extensive criminal record in addition to those necessary to establish his sentencing range, including at least one felony and ten misdemeanor convictions, and he had violated probation on numerous occasions. See Tenn. Code Ann. § 40-35-114(1), (8). The Appellant admitted that he had a long-term drug problem and that he had also sold drugs. The trial court found that the Appellant was not truthful with the court and that his potential for rehabilitation was poor. Therefore, the trial court did not abuse its discretion by sentencing the Appellant to the maximum in the range, and the Appellant's sentence was not grossly disproportionate.

The Appellant further contends that the trial court should not have imposed consecutive sentencing because "his criminal record is not so extensive as to warrant

- 16 -

consecutive sentences." Generally, "[w]hether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court." State v. Adams, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997). Tennessee Code Annotated section 40-35-115(b) contains the discretionary criteria for imposing consecutive sentencing. The trial court imposed consecutive sentencing upon finding that the Appellant was a professional criminal and that his record of criminal activity was extensive. Tenn. Code Ann. § 40-35-115(1), (2). The Appellant does not challenge the trial court's finding that he was a professional criminal, and we note that the Appellant acknowledged he had a history of selling drugs. Further, given the Appellant's numerous prior convictions, we conclude that the trial court did not abuse its discretion by finding that the Appellant had an extensive criminal history. Because the criteria for determining consecutive sentencing "are stated in the alternative[,] . . . only one need exist to support the appropriateness of consecutive sentencing." State v. Mickens, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003). The Appellant is not entitled to relief.

## III. Conclusion

Finding no error, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE

- 17 -